# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# CIVIL ACTION NO. 5:19-CV-00124-KDB-DSC

| | |
|---|---|
| **REGGIE REDMON,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) **MEMORANDUM AND** |
| | ) **RECOMMENDATION AND ORDER** |
| | ) |
| **FLEXSOL PACKAGING** | ) |
| **CORPORATION,** | ) |
| | ) |
| **Defendant.** | ) |

**THIS MATTER** is before the Court on "Defendant's Motion to Strike Exhibit A from Plaintiff's Complaint and Plaintiff's Amended Complaint Pursuant to Fed. R. Civ. P. 12(f)," Doc. 12, and "Defendant's Second Partial Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)," Doc. 13, and the parties' associated briefs and exhibits, Docs. 14, 16 and 17.

This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1), and these Motions are now ripe for consideration.

Having fully considered the arguments, the record, and the applicable authority, the undersigned will <u>grant</u> Defendant's Motion to Strike and respectfully recommends that Defendant's Motion to Dismiss be <u>denied</u>, as discussed below.

## I. PROCEDURAL AND FACTUAL BACKGROUND

Accepting the allegations of the Verified Amended Complaint, Doc. 10, as true, Plaintiff Reggie Redmon is an African-American male and a lifelong, devoted Baptist. Plaintiff observes Sundays as the Sabbath and abstains from participating in any secular work on Sundays. Every

Sunday, Plaintiff volunteers as an associate minister at a Baptist Church, where he plays the piano and drums and teaches Sunday school.

On or about December 12, 2012, Defendant Flexsol Packaging Corporation hired Plaintiff to work in its Statesville plant as a Repel Operator. At the start of his employment, Plaintiff informed his Plant Manager Jim Redman and his then direct supervisor Mike Martin that he could not engage in secular work on Sundays because of his religious beliefs and his service as an associate minister at a nearby Baptist church. Redman and Martin are Caucasian. They accommodated Plaintiff's request and did not schedule him to work on Sundays. Several of Plaintiff's co-workers who wanted overtime hours agreed to work on Sundays.

Until June 2016, Plaintiff maintained a good working relationship with his co-workers and supervisors. He did not receive any disciplinary actions and was recognized within the plant for his positive performance.

In June 2016, Plaintiff witnessed his co-worker David Hensley tie a rope into a noose. Hensley is Caucasian. Plaintiff told Hensley that nooses had a racist history and it offended him. He also said that other African-American employees would be offended if they saw the noose. Hensley dismissed Plaintiff's concerns stating that "slavery happened a long time ago." Doc. 10 at ¶¶ 14-15. Plaintiff reported the incident to administrative supervisor David Johnson and to one of the plant's Leadmen, Nick Hartsell. Johnson and Hartsell are Caucasian. Both Johnson and Hartsell tried to diffuse Plaintiff's concerns, telling him that Hensley was "stupid," and simply "did not know any better." Id. at ¶ 18. They said it would be best for Plaintiff and other African-American employees to just ignore him. Id. Despite Plaintiff's complaint, Defendant did not take any corrective action against Hensley.

Soon after Defendant failed to discipline Hensley, Plaintiff witnessed him make another noose at work. And over time, Plaintiff heard Hensley make several racist comments including associating African-Americans with monkeys. Plaintiff complained to Johnson about how offensive Hensley's conduct was towards him and other African-American employees. But each time Plaintiff spoke with Johnson about Hensley's conduct, Johnson continued to say that Hensley simply did not know any better and that it would be best for Plaintiff and other African-American employees to ignore him. Despite Plaintiff's continued complaints about Hensley's racism, Defendant never disciplined him.

Plaintiff continued to witness Hensley engaging in racist behavior at work, including wearing a white sheet over his head resembling a Ku Klux Klan hood. In March 2017, Plaintiff shared his concerns about Hensley's conduct with a Latino employee known as "Chico." "Chico" told Plaintiff about Hensley's frequent use of racial slurs towards him such as "wetback." "Chico" also showed Plaintiff a recent picture of Hensley on his cell phone. "Chico" then forwarded the same picture to Plaintiff's cell phone showing Hensley in his FlexSol uniform and wearing a white sheet over his head.

When Plaintiff made several complaints to Johnson about Hensley's continued racist conduct, Plant Manager Redman and another supervisor Tony David began to build a disciplinary record against him in an effort to pressure him to stop reporting Hensley's conduct or to terminate him and replace him with a Caucasian employee. David is Caucasian. In July 2017, following a plant-wide inspection by the Food and Drug Administration, Redman wrote up Plaintiff and suspended him for three days for failing to cover his beard with a net, even though he had the net resting below his chin. Redman did not discipline Hensley who was not wearing a beard net at all, or another Caucasian employee whose beard net was resting on top of his head during the

inspection. All employees who were on the plant floor during the inspection were required to comply with those safety measures.

In November 2017, as Plaintiff concluded his shift, David approached him and asked "you got my machine running, boy?" Id. at ¶ 35. Plaintiff asked David to repeat himself. David again referred to him as "boy," using an even more offensive tone of voice. Id. at ¶ 36. Plaintiff told David that referring to him as "boy" when he was obviously an adult was racially offensive. David did not apologize.

Shortly thereafter, Plaintiff complained to Johnson about David's racist comments but Defendant took no corrective action. Meanwhile, Plaintiff continued to witness Hensley make nooses, wear white sheets over his head, and make racist statements. Despite continued complaints to Johnson and Johnson's later reporting of Plaintiff's complaints to Human Resources and Plant Manager Redman, nothing changed.

In late February 2018, David replaced Martin as Plaintiff's direct supervisor. Shortly thereafter, Plaintiff informed David that he could not work on Sundays because of his religious beliefs and service as a pastor. Unlike Plaintiff's former direct supervisor, David immediately opposed his scheduling request. David told Plaintiff that he would have to work on Sundays as scheduled.

David also continued to build a falsified disciplinary record against Plaintiff. David approached Plaintiff claiming that he had reviewed Martin's notes concerning his work performance and was not sure how many points Plaintiff had on his disciplinary record because he could not read Martin's handwriting. When Plaintiff insisted that he maintained a good record, David, without providing any justification for doing so, said that he would just put five-and-a-half

points on Plaintiff's record. At that time, Defendant terminated employees for accumulating a minimum of six points on their disciplinary record.

David also began assigning Plaintiff to particular machines which, for safety reasons, required his undivided attention for extended periods of time. This prevented him from having short breaks throughout the day to visit Johnson's office and complain about Hensley and David's racist conduct.

In early March 2018, David told Plaintiff that he needed to work on an upcoming Sunday. Plaintiff reminded David that he could not work on Sundays and informed him that one of his co-workers was more than willing to work in his place. When David would not accommodate Plaintiff, he raised his concerns directly with Plant Manager Redman. Redman challenged Plaintiff asking him which would pay more, his church work or his job, thus signaling to Plaintiff that if he wanted to keep his job he would need to work on Sunday.

On March 13, 2018, David terminated Plaintiff following his refusal to work on Sunday. He was replaced with David's son, a Caucasian.

Plaintiff filed a Charge of Discrimination with the EEOC on March 13, 2018. The EEOC issued Plaintiff a Notice of Right to Sue on June 27, 2019. Plaintiff filed his initial Complaint on September 24, 2019. Plaintiff filed his Verified Amended Complaint on December 13, 2019 bringing eight causes of action: (1) Racial Discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2; (2) Religious Discrimination under Title VII; (3) Retaliation based upon Race under Title VII, 42 U.S.C. § 2000e-3; (4) Retaliation based upon Religion under Title VII; (5) Racial Discrimination in Termination of Employment pursuant to 42 U.S.C. § 1981; (6) Retaliation based upon Race in Termination of Employment pursuant to § 1981; (7) Wrongful

Discharge based upon Race Discrimination and Retaliation under the North Carolina Equal Employment Practices Act ("NCEEPA"), N.C. Gen. Stat. § 143-422.22; and (8) Wrongful Discharge based upon Religious Discrimination and Retaliation under NCEEPA.

Defendant moves to strike Exhibit A attached to Plaintiff's Verfied Amended Complaint and to dismiss the first, second, fifth, seventh and eighth causes of action.

## II. MOTION TO STRIKE EXHIBIT A

Rule 12(f) of the Federal Rules of Civil Procedure allow the Court to strike "any redundant, immaterial, impertinent, or scandalous matter" from a pleading. Fed. R. Civ. P. 12(f). While generally disfavored, courts have broad discretion in ruling on motions to strike. Waste Mgmt. Holdings, Inc. v. Gilmore, 252 F.3d 316, 347 (4th Cir. 2001); see also, Brown v. Inst. For Family Centered Servs., Inc., 394 F. Supp. 2d 724, 727 (M.D.N.C. 2005) ("Motions to strike are viewed with disfavor and are granted only for egregious violations. Thus, before a motion to strike will be granted the allegations must be the type envisioned by the rule and prejudicial.") (citations omitted). "The issue before the Court on a Rule 12(f) motion is not whether evidence is admissible, but whether it is immaterial, impertinent, and scandalous." Fender v. Biltmore Forest Country Club, Inc., 2018 WL 1995532, at *1 (W.D.N.C. April 27, 2018) (quoting Lane v. Endurance Am. Specialty Ins. Co., No. 3:10-CV-401-MOC-DCK, 2011 WL 1343201, at *2-*3 (W.D.N.C. April 8, 2011)).

Defendant moves to strike Exhibit A attached to Plaintiff's Complaint and Verified Amended Complaint. Exhibit A is a photograph. Defendant contends that this photograph is not a written instrument as required by Rule 10(c) of the Federal Rules of Civil Procedure, but rather evidentiary in nature.

Rule 10(c) of the Federal Rules of Civil Procedure states that a "copy of a written instrument" may be attached to a Complaint and taken as part of that Complaint for "all purposes." Fed. R. Civ. P. 10(c). In E.E.O.C. v. Bo–Cherry, Inc., No. 3:13–CV–210–MOC–DSC, 2013 WL 2317724, at *3–4 (W.D.N.C. May 28, 2013)), this Court held that the Federal Rules of Civil Procedure consistently describe pleadings as containing "statements" and "allegations." Such language does not contemplate the attachment of exhibits such as photographs. The Court reasoned that "complaints and answers are vehicles for teeing up claims and defenses, not offering or introducing proof of those claims." Id. at *4. See also, In re NC Swine Farm Nuisance, No. 5:15-CV-13-BR, 2015 WL 3948309, at *2 (E.D.N.C. June 29, 2015) (photographs are not written instruments but evidentiary in nature).

Applying those legal principles, the Court concludes that Exhibit A to Plaintiff's Complaint and Verified Amended Complaint is not a written instrument. Accordingly, the Motion to Strike is **GRANTED**. Exhibit A is **STRICKEN** from the Complaint and Verified Amended Complaint. This is without prejudice to Plaintiff later seeking to introduce the photograph in conjunction with an appropriate motion or at trial.

### III. MOTION TO DISMISS

#### A. Standard of Review

In reviewing a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563. A complaint attacked

by a Rule 12(b)(6) motion to dismiss will survive if it contains enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In Iqbal, the Supreme Court articulated a two-step process for determining whether a complaint meets this plausibility standard. First, the court identifies allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555) (allegation that government officials adopted challenged policy "because of" its adverse effects on protected group was conclusory and not assumed to be true). Although the pleading requirements stated in "Rule 8 [of the Federal Rules of Civil Procedure] mark[] a notable and generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 678-79.

Second, to the extent there are well-pleaded factual allegations, the court should assume their truth and then determine whether they plausibly give rise to an entitlement to relief. Id. at 679. "Determining whether a complaint contains sufficient facts to state a plausible claim for relief "will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief,'" and therefore should be dismissed. Id. (quoting Fed. R. Civ. P. 8(a)(2)).

**B. Racial Discrimination Claims under Title VII, Section 1981 and NCEEPA**

Defendant moves to dismiss Plaintiff's racial discrimination claims under Title VII, Section 1981, and the NCEEPA on three grounds:

1) The claims of disparate treatment occurred more than 180 days prior to the filing of the EEOC Complaint and are time barred. Doc. 14 at 7;

2) "The allegations in the [Verified Amended] Complaint, even taken as true, do not give rise to an inference that there are separate acts that are so related which would support a hostile workplace claim." Id. at 9; and

3) "Plaintiff's allegation he was terminated and co-worker's son was hired does not give rise to an inference of racial discrimination." Id. at p. 10.

In McCleary-Evans v. Md. Dep't of Transp., 780 F.3d 582 (4th Cir. 2015), the Fourth Circuit examined the sufficiency of factual allegations needed to withstand a motion to dismiss a Title VII discrimination case in light of Iqbal and Twombly. The Court held that while a plaintiff need not plead a prima facie case of discrimination, he must still state a claim that "is plausible on its face." McCleary–Evans, 780 F.3d at 585 (quoting Iqbal, 556 U.S. at 678). To state a plausible claim of discrimination, a plaintiff is "required to allege facts to satisfy the elements of a cause of action created by that statute." Id.

For a "typical discriminatory discharge case, the plaintiff establishes a prima facie case by showing '(1) that he is a member of a protected class; (2) that he suffered from an adverse employment action; (3) that he was performing at a level that met his employer's legitimate expectations; and (4) that the position was filled by a similarly qualified applicant outside the protected class.'" Guessous v. Fairview Property Investments, LLC, 828 F.3d 208, 219 (4th Cir. 2016) (quoting King v. Rumsfeld, 328 F.3d 145, 149 (4th Cir. 2003)).

Plaintiff filed an EEOC Charge challenging the basis for his termination. He is not making a hostile work environment claim. Therefore, the question is whether Plaintiff has pled a claim for termination on the basis of racial discrimination. The Court finds that the factual allegations set forth in Plaintiff's Verified Amended Complaint establish a prima facie case of racial discrimination. Plaintiff is African-American. Defendant terminated him on or about March 13, 2018. At the time of Plaintiff's termination, his supervisor David claimed that he was not sure how many points Plaintiff had on his disciplinary record and proceeded to falsify it. Plaintiff maintained a positive work record. Plaintiff also alleges that from 2012 until on or about June 2016, he did not receive any disciplinary actions and was recognized within the plant for his positive work record. Finally, Defendant replaced him with David's son, a Caucasian.

The factual allegations in Plaintiff's Verified Amended Complaint also provide circumstantial evidence showing Defendant's intent to terminate him based upon his race. See Desert Palace, Inc. v. Costa, 539 U.S. 90, 100 (2003) ("Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence."). There are also allegations of discriminatory intent by way of Defendant's history of favoring Caucasian employees and protecting them from disciplinary measures, despite their engagement in misconduct at the workplace. See Lucas v. Dole, 835 F.2d 532, 534–35 (4th Cir. 1987) (explaining that a plaintiff can establish a prima facie case of disparate treatment by providing evidence of an employer's "acts of favoritism" towards other employees who are not a part of the protected class). Plaintiff alleges that David terminated him just four months after he used the racially-charged term "boy" towards him in an offensive tone of voice and failed to apologize. See Ash v. Tyson Foods, Inc., 546 U.S. 454, 456 (2006) ("Although it is true the [word "boy"] will not always be evidence of racial animus, it does not follow that the term, standing alone, is always benign. The speaker's

meaning may depend on various factors including context, inflection, tone of voice, local custom, and historical usage."). See also Martin v. Brondum, 535 Fed. Appx. 242, 244 (4th Cir. 2013) ("Racially charged code words may provide evidence of discriminatory intent by sending a clear message and carry the distinct tone of racial motivations and implications.") (quoting Guimaraes v. SuperValu, Inc., 674 F.3d 962, 974 (8th Cir. 2012)).

For these reasons, the undersigned finds that Plaintiff has stated a claim for termination on the basis of racial discrimination and respectfully recommends that Defendant's Motion to Dismiss Plaintiff's First, Fifth, and Seventh Causes of Action be denied.

### C. Religious Discrimination Claims under Title VII and NCEEPA

Defendant contends that Plaintiff has failed to state a claim for religious discrimination under Title VII and the NCEEPA. Defendant argues that even taking the facts as true, "Plaintiff has not alleged that he had a sincerely held religious belief that he could not work on Sundays, he did work on Sundays, as a Minister, Sunday School Teacher, and musician." Doc. 14 at 16.

Title VII provides that "an employer may not discharge or discriminate against an individual in employment because of the individual's religion." EEOC v. Thompson Contracting, 333 Fed. Appx. 768, 771 (4th Cir. 2009) (citing 42 U.S.C. § 2000e-2(a)(1)). "Religion," as defined by Congress "includes all aspects of religious observance and practice, as well as belief." 42 U.S.C. § 2000e(j).

To properly plead religion-based employment discrimination, a plaintiff must show either disparate treatment or failure to accommodate religious practices. See generally Chalmers v. Tulon Co. of Richmond, 101 F.3d 1012, 1017 (4th Cir. 1996). A plaintiff may rely upon direct or circumstantial evidence. If a plaintiff cannot provide direct evidence of religious discrimination, then he must "utilize a burden-shifting scheme similar to the one the [United States] Supreme

Court articulated in McDonnell Douglas Corp. v. Green to develop an inferential case." Id. Pursuant to McDonnell Douglas, a plaintiff "must first establish a prima facie case of religious discrimination," and then "[i]f the employee establishes a prima facie case, the burden then shifts to the employer to show that it could not [reasonably] accommodate the plaintiff's religious needs without undue hardship." Thompson Contracting, 333 Fed. Appx. at 771 (citing EEOC v. Firestone Fibers & Textiles Co., 515 F.3d 307, 312 (4th Cir. 2008)).

For religious discrimination claims under the NCEEPA, the North Carolina Supreme Court has "explicitly adopted the Title VII evidentiary standards." Johnson v. Crossroads Ford, Inc., 749 S.E.2d 102, 108 (N.C. App. 2013) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); North Carolina Dep't of Correction v. Gibson, 301 S.E.2d 78, 82 (1983)).

To state a prima facie claim for failure to accommodate, an employee must allege that: "(1) he or she has a bona fide religious belief that conflicts with an employment requirement; (2) he or she informed the employer of this belief; [and] (3) he or she was disciplined for failure to comply with the conflicting employment requirement." U.S. Equal Emp't Opportunity Comm'n v. Consol Energy, Inc., 860 F.3d 131, 141 (4th Cir. 2017) (citation omitted), cert. denied, ––– U.S. ––– 138 S.Ct. 976, 200 L.Ed.2d 246 (2018); see also E.E.O.C. v. Abercrombie & Fitch Stores, Inc., 575 U.S. 768, 135 S.Ct. 2028, 2033, 192 L.Ed.2d 35 (2015) (clarifying that "the rule for disparate-treatment claims based on a failure to accommodate a religious practice is straightforward: An employer may not make an [employee's] religious practice, confirmed or otherwise, a factor in employment decisions").

"[U]nder a failure-to-accommodate theory [,] 'an employee can establish a claim even though [s]he cannot show that other (unprotected) employees were treated more favorably or cannot rebut an employer's legitimate, non-discriminatory reason for her discharge.'" Abeles v.

Metro. Wash. Airports Auth., 676 F. App'x 170, 176 (4th Cir. 2017) (citing Chalmers, 101 F.3d at 1018). To that end, "an employer must, to an extent, actively attempt to accommodate an employee's religious expression or conduct even if, absent the religious motivation, the employee's conduct would supply a legitimate ground for discharge." Chalmers, 101 F.3d at 1018.

The Court finds that the factual allegations set forth in Plaintiff's Verified Amended Complaint establish a prima facie case of religious discrimination. Plaintiff is a lifelong, practicing Baptist. Based upon his religious beliefs, he observes Sundays as the Sabbath and abstains from participating in any secular work. He engages in non-secular service as a pastor at a local Baptist church on Sundays.

On multiple occasions Plaintiff informed Defendant about his bona fide religious beliefs against secular work on Sundays. At the start of his employment, he informed his plant manager and his then-direct supervisor that he could not work on Sundays because of his religious beliefs. When David became his new direct supervisor, Plaintiff immediately informed him that "he could not work on Sundays because of his lifelong religious belief of not working on Sundays and his related unpaid service as an Associate Minister at a nearby Baptist church." Doc. 10 at ¶ 42–43. And on or about early-March 2018, after David told Plaintiff that he needed to work on an upcoming Sunday, Plaintiff reminded David that he could not do so because of his religious beliefs.

Plaintiff alleges that Defendant terminated his employment on or about March 13, 2018, in part, because he refused to work on the upcoming Sunday. Prior to his termination, Plaintiff notified David that another employee was more than willing to work on Sunday, thus eliminating any possible undue hardship for the Defendant.

For those reasons, the undersigned finds that Plaintiff has stated a claim for religious discrimination and respectfully recommends that Defendant's Motion to Dismiss Plaintiff's Second and Eighth Causes of Action be denied.

## IV. **ORDER**

IT IS ORDERED that "Defendant's Motion to Strike Exhibit A from Plaintiff's Complaint and Plaintiff's Amended Complaint Pursuant to Fed. R. Civ. P. 12(f)," Doc. 12, is **GRANTED**. Exhibit A is **STRICKEN** from Plaintiff's Complaint and Verified Amended Complaint. This is without prejudice to Plaintiff later seeking to introduce the photograph in conjunction with an appropriate motion or at trial.

## V. **RECOMMENDATION**

FOR THE FOREGOING REASONS, the undersigned respectfully recommends that "Defendant's Second Partial Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)," Doc. 13, be **DENIED**.

## VI. **NOTICE OF APPEAL RIGHTS**

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316;

Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation and Order to counsel for the parties and to the Honorable Kenneth D. Bell.

**SO RECOMMENDED AND ORDERED.**

Signed: February 27, 2020

David S. Cayer
United States Magistrate Judge